■ VINCENT COBBLAH et al., Appellants-Respondents, et al., Plaintiff, v ROSCOE KATENDE et al., Respondents-Appellants. [713 NYS2d 723] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered December 6, 1999, after jury trial, in favor of the defendants, unanimously reversed, on the

law, without costs, the complaint reinstated and the case remanded for a new trial. Cross appeals from orders, same court and Justice, entered on or about December 6, 1999, which denied defendants' motions to strike plaintiffs' demand for a jury trial, for summary judgment and for a directed verdict at the close of plaintiffs' case, unanimously dismissed, without costs.

Prior to May 1996, anesthesiologists at Our Lady of Mercy Medical Center in the Bronx were employed as independent contractors by a professional corporation owned by Dr. Steven Seidman, the Director of Anesthesiology at the hospital. In May 1996, Dr. Seidman resigned and defendant Katende became Interim Director of Anesthesiology. Katende formed a new billing corporation, Metro Anesthesiologists, in September 1996 but no formal agreement between the hospital and Metro was concluded until June 1999. During 1997 and 1998, there were various discussions regarding anesthesiologist compensation. In May 1998, a compensation agreement was signed which provided that Katende would receive $600,000 annually, that account books would be open for all anesthesiologists, that Katende would pay all expenses and that each anesthesiologist would receive $15,000 for the month of May. There was no explanation of how revenues would be divided even though the agreement was denominated a revenue sharing agreement. No further agreement was ever reached. After Katende became Director of the department in late 1998, he began firing anesthesiologists. Plaintiff Dhar was terminated in December 1998 and plaintiffs Lopez, Dauphin and Cobblah were locked out on the eve of trial in the autumn of 1999. The present action was commenced in February 1999 and sets forth four causes of action seeking an accounting, restitution as a result of unjust enrichment, imposition of a constructive trust and damages for the years 1997 and 1998 resulting from breach of contract. Plaintiffs allege: that Katende and they agreed in 1997 or 1998 that Metro would bill for plaintiffs' services; that each plaintiff and Katende would deduct agreed-upon drawings as well as expenses; and, that the balance of net revenues would be paid to plaintiffs on an equal basis. On the eve of trial, Katende moved for summary judgment on various grounds but the court refused to review the untimely papers and directed the parties to trial. During trial, the court granted Mercy's motion to quash a subpoena to obtain testimony and documents from Mercy's President and CEP which would have been relevant to allegations that Katende had made an agreement with Mercy to donate $2 million to the hospital over ten years. The court ruled such evidence was irrelevant to any

agreement amongst the parties. At the close of the case, the court refused to charge the jury on joint venture. This was error requiring reversal and a new trial. Trial evidence, if believed, supported plaintiffs' contentions that Katende met with them and promised an equal division of revenue at the end of each year, that Katende was ceded daily management of the anesthesiologists' economic relationships with Mercy, that the anesthesiologists agreed to make a joint contribution of their effort and skill, and that there was no reasonable expectation that there would be any losses. Evidence was present on all elements necessary to find a joint venture (*Ackerman v Landes*, 112 AD2d 1081, 1082; *Matter of Steinbeck v Gerosa*, 4 NY2d 302, 317, *appeal dismissed* 358 US 39). Their oral agreement, if established, could be sufficient to establish a joint venture (*Blank v Nadler*, 143 AD2d 966). Aside from the refusal to provide this charge, the trial court improperly excluded evidence of Katende's agreement with Mercy for the Anesthesiology Department to make sizeable prospective contributions, evidence that Katende was able to garner an extra $1 million annually by breaching his agreement with plaintiffs, and evidence of Katende's termination of privileges for three of the plaintiffs on the eve of trial. Such evidence is clearly relevant to material allegations made by plaintiffs, provides possible motivation for Katende's conduct or has a bearing on Katende's credibility and poses no risk of prejudice to him.

Katende's motion for summary judgment was untimely and his motion for directed verdict was properly denied since the Statute of Frauds is no bar to a joint venture agreement. Finally, while plaintiffs' request for an accounting is equitable in nature, the crux of plaintiffs' complaint is that Katende breached an agreement with plaintiffs, an issue involving factual issues appropriate for jury resolution. We have reviewed the other contentions asserted by Katende and find them to be without merit. Concur—Nardelli, J. P., Tom, Rubin, Andrias and Buckley, JJ.