■ Minerva Vega, Respondent, v Restani Construction Corp. et al., Defendants, and General Fence Corporation, Appellant. [901 NYS2d 51]—

Order, Supreme Court, Bronx County (Geoffrey D. Wright, J.), entered February 27, 2009, which, in an action for personal

injuries allegedly sustained when plaintiff maintenance worker attempted to move a garbage can containing improperly discarded concrete blocks, denied the motion of defendant General Fence Corporation (GFC) for summary judgment dismissing the complaint and all cross claims as against it, affirmed, without costs.

GFC, the fencing subcontractor on a project to renovate the park where plaintiff worked, established prima facie entitlement to summary judgment through an affidavit from its principal, who averred that GFC, hired by the park's owner, did not create the condition alleged to have caused plaintiff's accident (*see Stiver v Good & Fair Carting & Moving, Inc.*, 9 NY3d 253, 257 [2007]; *Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]; *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]). Plaintiff however, raises a triable issue of fact with regard to whether GFC created the overloading condition alleged, insofar as the evidence proffered shows that prior to the date of the accident GFC and the general contractor had exclusive control over the park, including the area where the subject garbage can was located, and that GFC's work may have involved the breaking-up and removal of concrete. Accordingly, the existence of triable issues of fact, albeit circumstantially, precludes the dismissal of the complaint as against GFC (*see Koeppel v City of New York*, 205 AD2d 402, 403 [1994]).

Any claim that, even if proven, GFC's conduct in overloading the garbage cannot be tantamount to negligence is without merit (12 NYCRR 23-2.1 [b]; *Palladino v United States Lines*, 111 AD2d 656 [1985] [cause of action for the overloading of containers, allegedly causing injury to the plaintiff was viable predicate mandating defense by insurance company]; *Keating v Cookingham*, 223 AD2d 997 [1996] [court recognized cause of action for injury to the plaintiff resulting from the overloading of garbage cans but dismissed action for other grounds]).

In support of its position, the dissent conflates two distinct points of law, neither of which, on the record here, mandates summary judgment in GFC's favor. It is true that generally an employee cannot sue for injuries caused by conditions inherent in the work he is tasked to perform (*Imtanios v Goldman Sachs*, 44 AD3d 383, 385-386 [2007], *lv dismissed* 9 NY3d 1028 [2008]). It is also true that "[w]hen a workman confronts the ordinary and obvious hazards of his employment, and has at his disposal the time and other resources (e.g., a co-worker) to enable him to proceed safely, he may not hold others responsible if he elects to perform his job so incautiously as to injure himself" (*Abbadessa v Ulrik Holding*, 244 AD2d 517, 518 [1997], *lv denied* 91 NY2d

814 [1998]; *see also Marin v San Martin Rest.*, 287 AD2d 441, 442 [2001]; *Keating* at 998). However, contrary to the dissent's finding, on this record, there is no evidence supporting the conclusion that plaintiff's job entailed the handling of very heavy garbage cans so as to conclude that the accident was caused by a condition inherent in her work. Moreover, the evidence demonstrates that the condition alleged, namely heavy chunks of cement in the garbage can plaintiff attempted to move, was obscured, and thus not obvious or visible. Accordingly, since there is no evidence that she confronted an *obvious* hazard and nevertheless chose to perform her job without the aid of resources available to her, there is no support for the dissent's position that this action warrants dismissal pursuant to *Abbadessa, Marin*, or *Keating*.

We have considered GFC's remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Sweeny, Freedman and Román, JJ.

Catterson, J., dissents in a memorandum as follows: I would reverse and dismiss the complaint against General Fence Corporation (hereinafter referred to as GFC) primarily on the grounds that precedent mandates dismissal of a complaint where the hazard of the injury sustained is inherent in a plaintiff's employment. Furthermore, in my opinion, GFC is entitled to summary judgment, as a matter of law, as the plaintiff failed to produce evidentiary proof sufficient to establish the existence of a triable issue of fact. Indeed, as GFC asserts, the plaintiff did not provide any factual basis for her allegation that a cement block was in the garbage can on the day of the accident, much less that it was placed there by GFC. Therefore, for the reasons set forth below, I must respectfully dissent.

The plaintiff, Minerva Vega, a maintenance worker employed by the New York City Parks Department at Loreto Park, in the Bronx, claims she injured her shoulder when she attempted to move a garbage can allegedly containing a cement block. The plaintiff's duties included sweeping, taking out garbage and moving garbage cans to the front of the park for pickup by the Sanitation Department.

The defendant Restani Construction Corp. was the general contractor retained by the Parks Department to perform renovation work at the park in May 2002. GFC was the fencing subcontractor, and defendant Excellent Asphalt Paving was the painting and sealing subcontractor on the project.

The plaintiff worked inside the park until construction started. Before she was injured, she saw workers in the park

breaking up concrete to fix the benches in the handball court and by the main entrance fence. After construction was completed, the plaintiff resumed her duties inside the park on May 26, 2002. Two days later, on May 28, 2002, the plaintiff was working with two coworkers when she attempted to move a garbage can and felt a tear in her left shoulder. One to two weeks later, the plaintiff went to the park with an investigator from her attorney's office. The investigator took photographs of a concrete block in one of the garbage cans at the entrance to the park.

The plaintiff commenced this action alleging that her injury was proximately caused by the defendants' negligence in improperly disposing of construction debris. GFC denied the allegations, and cross-claimed against Restani and Excellent Asphalt. Subsequently, GFC moved for summary judgment dismissing the complaint and all cross claims against it.

In support of the motion, GFC submitted, inter alia, the deposition testimony of the plaintiff, and of Restani's project manager, and an affidavit of GFC's principal, Dalton Johnson. GFC argued that according to the plaintiff's testimony, and upon presentation of photos of the cement block in the garbage can, taken approximately two weeks after the accident, the plaintiff was unable to provide any factual basis for the allegation against it.

In opposition to the motion, the plaintiff submitted, inter alia, the affidavits of her coworkers in which they swore, in direct contradiction of the plaintiff's testimony, that each had looked in the garbage can on the day of the accident and had seen "pieces" or "chunks" of concrete. Both speculated in their affidavits that the concrete "had to have come" from the construction work.

The court denied GFC's motion for summary judgment. The court held that GFC had failed to address the affidavit of plaintiff's coworker, Jackie Diaz, who stated that until the date of the accident, the defendants had exclusive possession and access to the park and area where the garbage can was found. The court stated that this affidavit "perhaps" raised res ipsa issues that could only be answered at trial.

On appeal, GFC argues that the motion court's reliance on res ipsa loquitur was in error; that the plaintiff did not have a factual basis to meet her burden of proof; and that the plaintiff does not have a viable cause of action in negligence.

I agree. As a threshold matter, I believe precedent mandates the dismissal of the complaint as against GFC. The plaintiff alleges that she sustained her injury as a result of the weight of

the garbage can. In my opinion, this was an "ordinary and obvious" hazard of the plaintiff's duties, and thus, in accordance with case law, the cause of action is not viable because the hazard of injury was inherent in the plaintiff's employment. (*See Anderson v Bush Indus.*, 280 AD2d 949 [4th Dept 2001] [hazard of injury from repeatedly lifting heavy boxes and loading them onto truck inherent in the work of a United Parcel Service driver].) Specifically, it is well established that workers involved in trash or garbage removal and/or cleanup have no cause of action for confronting an ordinary and obvious hazard of employment such as falling or slipping on debris or injury from lifting a heavy garbage bag. (*See Jackson v Board of Educ. of City of N.Y.*, 30 AD3d 57 [1st Dept 2006, Sullivan, J.] [complaint dismissed where the plaintiff slipped on lettuce leaf on floor he was hired to sweep and clean]; *Imtanios v Goldman Sachs*, 44 AD3d 383 [1st Dept 2007], *lv dismissed* 9 NY3d 1028 [2008] [porter carrying trash to freight elevator had to walk through area of discarded computer parts, so hazard of falling on such debris was inherent to job], citing *Marin v San Martin Rest.*, 287 AD2d 441 [2d Dept 2001] [hazard of injury from lifting a heavy garbage bag and loading it into truck inherent in the work of a sanitation worker]; *Abbadessa v Ulrik Holding*, 244 AD2d 517 [2d Dept 1997], *lv denied* 91 NY2d 814 [1998] [complaint dismissed where plaintiff sanitation worker was injured while hoisting refrigerator into truck].)

Indeed, in *Abbadessa*, the Second Department found no cause of action "[w]hen a workman confronts the ordinary and obvious hazards of his employment." (244 AD2d at 518.) The court relied on *Keating v Cookingham* (223 AD2d 997 [3d Dept 1996]), which is cited by the majority as standing for the proposition that a cause of action exists for a sanitation worker's injury resulting from the overloading of a garbage can. That is a misreading of the decision. The Court in *Keating* dismissed plaintiff's complaint on the grounds, inter alia, that in confronting an ordinary hazard of his employment, that is, an overloaded garbage can, his injury was solely a result of proceeding incautiously. (223 AD2d at 998.)

In my opinion, the instant case is entirely analogous with the foregoing line of cases. The plaintiff's duty included moving garbage cans outside the park where they were then emptied into trucks by city sanitation workers. The garbage cans by definition, and according to the plaintiff's testimony, contained unspecified discarded items, each contributing to the overall weight of the can depending on what type of garbage was placed in the can.

This is not a case where the garbage at issue was broken glass, or toxic waste or used syringes, and where anyone placing such trash in a can accessible to the general public might possibly breach a duty given the foreseeability of harm arising out of such discarded objects. The alleged injury-causing element of the concrete block, or the "pieces" or "chunks" of concrete which the plaintiff's two coworkers swore they saw in the can right after the accident, was the weight of the concrete and not its inherent nature.

However, the hazard of being injured as a result of moving a heavy garbage can was the "ordinary and obvious" hazard the plaintiff faced in her employment which required her to move the cans from one location to another. I believe the majority has completely misconstrued the very use of the word "obvious" in its analysis. The majority has improperly adopted the narrowest definition of the adjective "obvious" as simply meaning *visible* as if it ends the analysis. Random House Webster's Unabridged Dictionary (2d ed 2001) defines obvious as "1. Easily seen, recognized or understood; 2. Open to view or knowledge; evident." Hence, the adjective "obvious" is not in reference to objects that can be seen. It is properly applied in the analysis of concepts that are easily understood by the workers. When the adjective has been used in the case law cited above, it has *only* qualified the term "hazards of . . . employment." (*See Marin*, 287 AD2d at 442, quoting *Abbadessa*, 244 AD2d at 518.) In *Marin* and *Abbadessa*, workers confront the "ordinary and obvious" hazards of employment by understanding there is a risk of injury arising from the handling of garbage. "Obvious" in those cases is not used in the sense that an item in that garbage must be visible to the worker in order for that worker to grasp the concept that there is a risk of injury from lifting garbage bags, some of which may be heavier than others. While the distinction is subtle, it is nonetheless critical as the focus on the English definition of a particular word does not elucidate the legal concept contained herein.

The record is devoid of any suggestion that there were any notices posted in the park restricting the type of garbage that could be placed in the cans, either by item description or by weight. Moreover, the plaintiff's testimony indicates that the cans were big.

The plaintiff, who had been working for the Parks Department for several months in this particular position knew, or should have known, that big garbage cans in a public park can contain almost any type of trash from old appliances to old bedding or clothes; also, that garbage in an open can could easily

increase the can's weight if, for example, it rained and water soaked into the garbage as well as being deposited in the bottom of the can itself. Moreover, there was nothing preventing the plaintiff from glancing inside the garbage can since according to her own testimony, it was open.

Moreover, for the foregoing reasons, the doctrine of res ipsa loquitur is entirely inapplicable. The submission of a case on a theory of res ipsa loquitur is warranted only when a plaintiff can establish that (1) the event is of the kind which ordinarily does not occur in the absence of someone's negligence; (2) the event must have been caused by an agency or instrumentality within the exclusive control of defendant; and (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff. (*See Ebanks v New York City Tr. Auth.*, 70 NY2d 621, 623 [1987]; *Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986].)

Here, as GFC argues, even assuming it discarded pieces of concrete in the garbage can, disposing of such garbage in such a can is not a negligent action. Second, there is no evidence that GFC had exclusive control of the park or the specific garbage can. The evidence shows that work was completed on May 20, 2002, eight days before the accident, and the concrete block was first seen by the plaintiff one to two weeks after the accident after the park became accessible again to the public.

In my opinion, GFC should be granted summary judgment. It is well settled that a party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact. Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action. (*See Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980].)

The plaintiff's deposition testimony was that she did not look in the can before attempting to move it, that she did not look in the can after she hurt her shoulder, and that neither of her coworkers looked in the can.

"Q: Once you realized that you were hurt did you look into the garbage pail at all?

"A: No. I just called [my coworker], and they sat me down, and I told them I had hurt my shoulder, and then she went and she started to move the garbage can and she said there has to

be some debris in there, something heavy in the garbage can, but she didn't look inside."

The plaintiff further testified that the reason no one looked inside the can was because "[e]veryone was busy calling the ambulance" and that she obtained the photograph of the "really big block of cement" in a garbage can when she returned to the park a week or two later. The plaintiff offered a photograph of the cement block in support of her claim, but at deposition she was not sure that the garbage can from which the photographed cement block came was the same one that she had attempted to move on the day of the accident. Her testimony further adduced that she did not know if anyone had thrown anything into the garbage can during the one-to-two week period between the date of the accident and the date she returned with the investigator.

Restani's project manager testified that the project was completed on May 20, 2002, eight days before the accident; he testified that Restani "may have" broken up the old concrete footing and taken it away in a truck, but he did not remember and had no records which would reflect whether this job was performed by Restani.

Dalton Johnson, a principal of GFC, by affidavit swore that the company was hired by Restani to take down a mesh fence, paint the posts, rails and poles, and to reinstall new mesh. Johnson did not remember removing any posts or working with concrete. Johnson had a truck on the job to haul away fence materials. He swore that it was the custom and practice of GFC to physically remove all debris it created, and any concrete debris would have been taken away from the park by truck.

In my opinion, GFC met its burden of making a prima facie showing that it did not create the alleged condition. Moreover, the plaintiff failed subsequently to come forward with any proof, in admissible form, of the existence of genuine issues of material fact. Specifically, the affidavits of her coworkers, which she offered in opposition to the motion for summary judgment, were in contradiction to her testimony. Both coworkers testified that they looked in the garbage can directly after the accident and saw "chunks" or "pieces" of concrete at the bottom of the can. Even if we accepted as true that the coworkers did look in the garbage can directly after the alleged injury occurred, their affidavits do not help the plaintiff. Neither coworker saw anyone place the pieces or chunks in the garbage can, and both, using the same phrase, speculated that the chunks or pieces of concrete "had to have come from" the construction workers. One of them surmised that, "[t]hese pieces of cement *had to*

*have* come from the construction work that was going on inside the park." Meanwhile, the other surmised "[t]he concrete *had to have* come from the people who were fixing that part of the park." However, speculation is insufficient to raise a triable issue of fact in order to overcome a motion for summary judgment. (*See Segretti v Shorenstein Co., E.*, 256 AD2d 234, 235 [1st Dept 1998] [complaint dismissed because while *"surmising"* that the oily substance causing his fall might have come from garbage room located near the defendant, "plaintiff testified that he never saw any substance emanating from that source" (emphasis added)].)

Accordingly, I would reverse and dismiss the complaint as against GFC.